UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SANJAY CHAKRAVARTY, et al., | CASE NO. C20-1576 MJP |
| Plaintiffs, | ORDER GRANTING ERIC PETERSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| ERIC PETERSON, et al. | |
| Defendants. | |

This matter comes before the Court on Defendant Eric Peterson's Motion for Partial Summary Judgment. (Dkt. No. 27.) Having reviewed the Motion, Plaintiffs' Opposition (Dkt. No. 32), Peterson's Reply (Dkt. No. 33), and the relevant portions of the record, the Court GRANTS the Motion.

**BACKGROUND**

Plaintiffs Sanjay Chakravarty and Txley Inc. allege that Eric Peterson violated "Chakravarty's right to be free from discrimination on the basis of his skin color or national

origin in the public bidding process." (First Amended Complaint (FAC) ¶ 3 (Dkt. No. 17).)[1] Peterson is the facilities manager for Skagit County, having previously worked for the City of Burlington in the Facilities Management Division. (Declaration of Eric Peterson ¶¶ 16-17 (Dkt. No. 28).)

Plaintiffs allege that Peterson engaged in discriminatory conduct while Peterson was with Burlington. In a discovery response, Plaintiffs state that in May 2017, Chakravarty conducted an amicable phone call with Peterson where Chakravarty introduced himself as "Jay" rather than Sanjay. (Ex. N to Peterson Decl. (Dkt. No. 28-14 at 4).) Chakravarty claims that when he then met Peterson face-to-face on June 20, 2017, Peterson was rude and dismissive and would not make eye contact. (Id. (Dkt. No. 28-14 at 4-5); see Declaration of Sanjay Chakravarty ¶ 5 (Dkt. No. 32-2).) Peterson claims this did not occur and that if it did, he did not treat Chakravarty any differently than he would anyone else. (Peterson Decl. ¶ 7.) Chakravarty also states that on June 29, 2017, he attempted to meet Peterson in person, but Peterson slammed a door in his face. (Ex. N to Peterson Decl. (Dkt. No. 28-14 at 5).) Chakravarty's declaration is far less specific about the incident or its date. (Chakravarty Decl. ¶ 5.) Peterson denies that he had this contact and notes that the doors of his office were "commercial doors with mechanical door closure devices" that "cannot be slammed." (Peterson Decl. ¶ 9.) He also notes inconsistencies in the documentation provided by Chakravarty in discovery about the date of the incident itself. (Peterson Decl. ¶ 10.) Chakravarty clarifies that they are not his notes. (Chakravarty Decl. ¶ 9.)

After Peterson began to work for Skagit County, Plaintiffs allege that Peterson engaged in bid-rigging, setting the bid criteria in such a way as to exclude Txley Inc. and the products it

---

[1] The Court refers to the First Amended Complaint, which was the operative complaint at the time Peterson filed his motion for partial summary judgment.

ORDER GRANTING ERIC PETERSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

sold. (FAC ¶¶ 24-26, 28-31.) When Peterson joined Skagit County, the County had already entered into a one-year contract with Txley for cleaning supplies. (FAC ¶ 22.) The contract expired in April 2020, and Peterson sent out a new bid. (FAC ¶ 24.) Plaintiffs allege that Peterson sent out the new bid to exclude Txley by specifying products sold by Txley's competitor, Bay City Supply, that could not be substituted, and by imposing a time-in-business requirement that excluded Txley. (FAC ¶¶ 28-30.) Peterson states that he had no ability to change the product requirements and that the eleven products in question could not be substituted. (Peterson Decl. ¶¶ 27-29.) He also states that he chose the 10-year business requirement for appearances only and did not know how many years Txley had been in business. (Id. ¶ 23.)

After the County received the responses to the bid, Peterson and his supervisor, Ken Hansen, determined to resubmit the bid to address supply-chain issues. (Id. ¶¶ 35-36.) Chakravarty states that he called Hansen to complain about the bid requirements and that this led to the re-bid. (Ex. N to Peterson Decl. (Dkt. No. 28-14 at 7).) Peterson states that he was not aware that Chakravarty had complained to Hansen about the first bid. (Id. ¶ 33.) After receiving responses to the second bid, the County ended up canceling the second bid and extending the existing contract with Txley but at higher prices that Txley demanded. (Id. ¶¶ 38-39.) Plaintiffs allege on information and belief that Peterson favors Txley's competitor, Bay City Supply, and has conspired with its employees through various meetings to favor Bay City Supply. (FAC ¶¶ 31-34.) Peterson denies these allegations and claims he has only had coffee once with an employee of Bay City Supply. (Peterson Decl. ¶¶ 41-42.)

## ANALYSIS

**A.     Legal Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323-24.

**B.     Plaintiffs' Civil Rights Claim**

Plaintiffs allege that Peterson has engaged in intentional discrimination. (FAC ¶¶ 40-54.) Though the First Amended Complaint does not identify a specific statute or constitutional provision, Plaintiffs' Second Amended Complaint clarifies that Plaintiffs' claims against Peterson are brought under 42 U.S.C. § 1981. (Compare FAC ¶¶ 40-54 with Second Amended Complaint ¶¶ 57-62 (Dkt. No. 34).) The Court agrees with Peterson that Plaintiffs have failed to provide sufficient evidence to support a claim under Section 1981 against Peterson.

Section 1981 provides that all persons "shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Claims brought under Section 1981 are limited to and require proof of intentional racial discrimination. Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30, 694 F.2d 531, 536, 538 (9th Cir. 1982); see Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989). "To prevail, a plaintiff must initially plead and

ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, __ U.S. __, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020). "[T]he focus of the judicial inquiry must be whether the plaintiff has proven by a preponderance of evidence facts from which the court must infer, absent rebuttal, that the defendant was more likely than not motivated by a discriminatory animus." Gay, 694 F.2d at 538.

To perform this inquiry, the Court applies the McDonnell Douglas burden-shifting analysis. Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1144-45 (9th Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973)). The plaintiff bears the initial burden of establishing a prima facie case of discrimination. "The proof required to establish a prima facie case is 'minimal and does not even need to rise to the level of a preponderance of the evidence." Id. at 1144 (quoting Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000)). "[I]f the plaintiff satisfies the initial burden of establishing a prima facie case of racial discrimination, the burden shifts to the defendant to prove it had a legitimate non-discriminatory reason for the adverse action." Id. "If the defendant meets that burden, the plaintiff must prove that such a reason was merely a pretext for intentional discrimination." Id. And the plaintiff must also show proof that "defendant's conduct did in fact cause the plaintiff's injury. . . ." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 346 (2013).

Plaintiffs have failed to present any evidence of discrimination sufficient to oppose the motion for summary judgment. Plaintiffs' opposition brief contains no citation to evidence or explanation of what evidence supports the claims. The opposition instead relies entirely on attorney argument, which is inadequate to raise a genuine dispute of material fact precluding summary judgment in Peterson's favor. The only evidence in the record are Chakravarty's

interrogatory responses that Peterson filed with his motion and the declaration Chakravarty filed in support of the opposition. None of this is cited by Plaintiffs in their opposition. Viewed in the light most favorable to Plaintiffs, the declaration and discovery responses show, at best, a prima facie claim of intentional discrimination as to Peterson's conduct while employed by Burlington. But Peterson has shown legitimate and unrebutted non-discriminatory explanations for the alleged conduct sufficient to warrant summary judgment. See Lindsey, 447 F.3d at 1144. And Plaintiffs have failed to identify evidence of damages traceable to the alleged misconduct. This warrants summary judgment in Peterson's favor as to the Burlington-related Section 1981 claim. See Nassar, 570 U.S. at 346. Additionally, there is no prima facie evidence of intentional discrimination as to the bids Peterson sent out while employed at Skagit County. Even if Plaintiffs had shown prima facie evidence, Peterson has provided unrebutted and legitimate non-discriminatory explanations for the conduct at issue. See Lindsey, 447 F.3d at 1144. And, again, there is no evidence of damages. See Nassar, 570 U.S. at 346. Peterson is therefore entitled to judgment as a matter of law in his favor on Plaintiffs' Section 1981 claims in full. The Court GRANTS the Motion.

## CONCLUSION

Plaintiffs have failed to raise a dispute of material fact to support their Section 1981 claims against Peterson. The Court GRANTS Peterson's Motion for Partial Summary Judgment and Peterson is entitled to judgment as a matter of law on Plaintiffs' Section 1981 claims.

The clerk is ordered to provide copies of this order to all counsel.

Dated May 5, 2021.

Marsha J. Pechman
United States Senior District Judge